UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VICTORIA TOLENTINO,<br><br>Plaintiff,<br><br>v.<br><br>TARGET CORPORATION,<br><br>Defendant. | Civil Action No. 18-3060 (JEB) |

## MEMORANDUM OPINION

Plaintiff Victoria Tolentino slipped and fell on a clear substance on the floor of a Target store here in the District of Columbia. She sued Target, alleging that it had failed both to maintain its property in a reasonably safe manner and to warn her of the dangerous condition. Defendant now moves for summary judgment, arguing that it lacked notice — either actual or constructive — of the slippery substance. Finding that there is evidence to the contrary, the Court will deny the Motion.

**I.  Background**

As it must at this stage, the Court sets out the facts in the light most favorable to Plaintiff. See Talavera v. Shah, 638 F.3d 303, 308 (D.C. Cir. 2011). On April 9, 2018, Tolentino walked into a Target store located in the Columbia Heights neighborhood of Northwest Washington. See ECF No. 21 (Def. MSJ), Exh. 1 (Deposition of Victoria Tolentino) at 35:7–13; Def. MSJ at 1. Upon entering, she headed toward the restroom but slipped on something before getting there. Id. at 55:9–19; see also ECF No. 25 (Pl. Opp.), Exh. 2 (Target Surveillance Video) (capturing

incident at 3:21:48). Plaintiff did not see this hazard before coming upon it because she was looking straight ahead. See Tolentino Depo. at 55:20–56:18.

The cause of her fall, however, quickly became apparent. While still on the ground, Tolentino noticed a "lake" of clear liquid around her. Id. at 56:19–57:18. Not only that, but she also observed what appeared to be shopping cart marks in the vicinity of the spill. Id. at 59:2–10. She testified that moments after her fall a Target employee came to her assistance. Id. at 62:1–13; Def. MSJ, Exh. 2 (Pl. Answers to Interrogs.), ¶ 2; see also Video at 3:22:12. That employee, Plaintiff maintains, knew about the spill before the accident occurred. See Pl. Ans. to Interrogs., ¶ 2. Specifically, she told Tolentino that she had reported the spill and had requested its clean-up. See Tolentino Depo. at 64:1–2 ("[S]he told me it was reported and it wasn't cleaned.").

Nearly seven months after her fall, on November 3, 2018, Plaintiff brought a negligence claim against Target in the Superior Court of the District of Columbia. See ECF No. 2 (Notice of Removal), Exh. A (Complaint) at ECF p. 8. Tolentino contends that the store should have mopped up the liquid or, at the very least, posted a warning about it. Id. at 8–9. Its failure to do either, she alleges, ultimately left her with a "serious, painful[,] and permanent" injury to her "head, neck, body, and limbs." Id. at 9. As recompense for her harms, Plaintiff seeks, *inter alia*, damages to the tune of $350,000. Id. On December 21, 2018, Defendant removed the matter here on diversity-jurisdiction grounds. Id., Exh. B (Removal) at ECF p. 15. After a round of discovery and an unsuccessful attempt at mediation, Target now moves for summary judgment. See ECF No. 20 (Joint Status Rep. of Jan. 16, 2020).

## II. Legal Standard

Upon a party's motion, Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if it can affect the substantive outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Holcomb, 433 F.3d at 895.

When a motion for summary judgment is under consideration, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Liberty Lobby, 477 U.S. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). The non-moving party's opposition, however, must consist of more than mere unsupported allegations. See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record," such as affidavits, declarations, or other evidence. See Fed. R. Civ. P. 56(c)(1). If the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Liberty Lobby, 477 U.S. at 249–50.

## III. Analysis

To establish negligence in the District of Columbia, a plaintiff must prove that: "(1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the breach of duty proximately caused damage to the plaintiff." Haynesworth v. D.H. Stevens Co., 645 A.2d 1095, 1098 (D.C. 1994). On the first element, it is a settled principle that "a business

invitor has a duty of care to its patrons while they are on its premise." Novak v. Capital Mgmt. & Dev. Corp, 452 F.3d 902, 907 (D.C. Cir. 2006) (applying D.C. law); see Smith v. Safeway Stores, Inc., 298 A.2d 214, 216 (D.C. 1972). When liability is predicated upon the existence of a dangerous condition, a plaintiff must show that the defendant had notice — either actual or constructive — of it. See Mixon v. WMATA, 959 A.2d 55, 58 (D.C. 2008) (quoting Marinopoliski v. Irish, 445 A.2d 339, 340 (D.C. 1982)). Here, Target contends that there is no evidence it had either. See ECF No. 21 (Def. MSJ) at 5–9.

A. Actual Notice

In order to establish actual notice, the plaintiff must present evidence that a defendant was, in fact, aware of the hazard. See, e.g., Falco v. WMATA, 2020 WL 473887, at *4 (D.D.C. Jan. 29, 2020) (detailing defendant's knowledge of slippery conditions, including wet-floor signs and testimony of its employees concerning water on premises). To shoulder that burden here, Tolentino points to video footage of the entrance to the store. See Pl. Opp. at 2–3.

The footage shows that, about 32 seconds before Plaintiff's incident, another individual slipped in the same area. See Video at 3:21:16 and 3:21:48. A Target security guard in the vicinity saw that person slip and fall. Id. at 3:31:01–3:21:32. Moments later, the guard stepped away from the location of the incident, approached another patron, and reviewed her receipt. Id. at 3:21:38. As the guard was doing so, Tolentino entered the store and fell shortly thereafter — in the very same place as the first individual. Id. at 3:21:32–48.

From this footage alone, a reasonable jury could determine that, because one of its guards witnessed the fall of the first patron, Target had actual notice that the floor was slippery. That is because, as a general matter, the knowledge acquired by a corporation's agent — here, the

guard — is imputed to the corporation itself.  See Wayne J. Griffin Elec., Inc. v. Sec'y of Labor, 928 F.3d 105, 109 (D.C. Cir. 2019).

The jury, moreover, could find additional support of actual notice in Tolentino's testimony.  As noted, a Target employee told Plaintiff that she had "reported [the spill] and [that] it wasn't cleaned."  Tolentino Depo. at 64:1–2.  Defendant attempts to cast doubt on this testimony by pointing out that she could not remember certain details about the employee.  Id. at 62:6–65:3 (unable to recollect employee's gender and clothing).  Yet, viewing this evidence in the light most favorable to Plaintiff, see Talavera, 638 F.3d at 308, a reasonable trier of fact could well conclude that the employee referenced at her deposition is the guard who appears in the surveillance footage.  Chiefly, the guard appears to be black and came to her assistance moments after the fall — facts that line up with Plaintiff's testimony.  See Tolentino Depo. at 62:11–13, 63:17–18, 64:22–65:3; Video at 3:22:00–10.

In Target's view, all this is beside the point because the guard's remarks to Tolentino are inadmissible hearsay.  See Def. MSJ at 7–8; ECF No. 26 (Def. Reply) at 6–7.  Under Federal Rule of Evidence 801(d)(2)(D), a statement is not hearsay and may be admitted against an opposing party if it "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed."

According to Defendant, this Rule does not apply to the guard's comments because Plaintiff has not shown an agency relationship.  The Court disagrees.  The surveillance footage is replete with examples of the guard conducting herself as a Target agent or employee.  At several points, for example, she checks customers' receipts.  See, e.g., Video at 3:11:48, 3:14:43, 3:17:43.  At others, she returns handheld shopping baskets and carts to their respective locations. Id. at 3:15:57–3:16:30, 3:17:03.  She also appears to assist the individuals, including Plaintiff,

5

who slipped on the floor. Id. at 3:21:16, 3:22:00–3:23:00. What is more, Defendant has failed to present evidence that she is not its agent or employee. For these reasons, the Court finds that the guard's remarks are admissible.

Given the above, a factfinder could reasonably determine that Target actually knew about the spill. That being so, the Court need not wade into the constructive-notice inquiry.

B. Spill Response

As a fallback, Target argues that even if it was aware of the liquid on the floor, it did not breach its duty to Plaintiff. That is because it did not have enough time to do anything about the spill before Tolentino slipped. See Def. Reply at 7–8; see also Video at 3:21:16–48 (guard became aware of spill 32 seconds before Plaintiff's fall). To support its position, Target cites a Maryland case for the proposition that a defendant is entitled to summary judgment when it has "less than four minutes" to address a hazard on its premises. See Def. Reply at 8 (quoting Rehn v. Westfield Am., 837 A.2d 981, 985–87 (Md. App. 2003)).

Rehn stands for no such thing. To start, the record there did not establish exactly how much time the defendant had to respond to a spill (other than the fact that it was under four minutes). See Rehn, 837 A.2d at 986. In granting summary judgment, the court noted that a jury would have to engage in impermissible "speculat[ion]" and "conjecture" to pinpoint the relevant timeframe. Id. at 987. Here, by contrast, a jury does not have to make any guesses — video footage captured the entire incident. Indeed, Rehn, which is not binding here, did not reduce to any bright-line rule the time in which a danger must be dealt with. Instead, it made clear that whether an invitor has taken reasonable action to eradicate or warn of a given hazard will necessarily depend on the circumstances. Id. at 984–85 (collecting cases). A jury could

6

conclude that in the circumstances here, the guard, having witnessed the prior fall, should have remained in place and warned other shoppers of the hazard until it could be cleaned.

## IV. Conclusion

The Court, accordingly, will deny Defendant's Motion for Summary Judgment. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: April 7, 2020